Case number 19-7117, Fadi Elsalameen, Appellant, v. Bank of Palestine, P.L.C. Mr. Blakely for the Appellant, Ms. Gaitley for the Appellee. Blakely. Yes, sir, good morning. My name is William Blakely. I'm here for the Appellant, Fadi Elsalameen. I'd like to reserve two minutes, if I could, for my rebuttal. The district court order should be reversed for two reasons. Number one, Mr. Elsalameen has satisfied the long-arm statute, and he's satisfied at least one if not more of the plus factors set forth in 423A3, the long-arm statute. There's been evidence of thousands of contacts in the District of Columbia, tens of millions of dollars were exchanged by their customers, and there's been a persistent course of conduct with the International Finance Corporation. Now, the second basis for our position that the district court should be reversed is the position it took with the International Finance Corporation. The government contacts exception that was relied upon does not apply to the International Finance Corporation for two reasons. One, we have a non-resident alien, and it doesn't apply to a non-resident alien. And then number two, the International Finance Corporation itself is not a U.S. federal instrumentality. As a result, we believe that... Mr. Blakely, I have a question about the long-arm statute. You're relying on 13423A4A, which requires tortious injury in the district caused by an actor omission outside the district, and it requires, as you refer to the plus factors, regularly doing or soliciting business or engaging in a persistent course of conduct or driving substantial revenue from goods used or consumed or services that are in the district. So those are the elements. But then looking at 13423B, it says when jurisdiction over a person is based solely upon the section, only a claim for relief arising from acts enumerated in the section may be asserted against him. So does the claim for relief have to arise in part from those plus factor contacts? Yes, thank you, Jan. The answer is no. Crane v. Carr, the leading case in the United States Court of Appeals for the District of Columbia, makes it really clear that no, there does not have to be that connection. So the answer is no. And, I mean, that's sort of what I thought you were going to say, but it makes it really difficult to understand what role those plus factor elements are playing and how to understand them. If they're not, they're clearly not the kind of robust, persistent course of conduct that would be required to support general personal jurisdiction as a constitutional matter. And they're not, it sounds like, even the persistent course of conduct related to the claim that would be required for specific personal jurisdiction as a constitutional matter. And so I'm just trying to figure out, and do you have a theory of what role they play? Because it's very general catch-all language. It's hard to know what kinds of conduct might be reasonably thought to meet those requirements. Yes, thank you. I've looked at the conduct, of course, set forth in Crane v. Carr. And in our case, we have many contacts. They are, for example, as I mentioned earlier, we had the contacts by the shareholders. We had contacts by depositors. There were trips to the District of Columbia by very, very senior people. They were, in fact, the chairman and general manager of the bank, the chief international relations officer, the chief business development officer. And these took place over a number of years. And the International Finance Corporation contacts were also over a number of years. And former Justice Ginsburg, when she wrote the Crane v. Carr decision, set forth the factors of the defendant. And there were exchanges with zoo animals, and there was a publication. And we went through all of those factors. And we have significant contacts in the District of Columbia. But it's really clear in Crane v. Carr, they do not have to be directly related to the injury. So one way to understand it is that the plus factor is simply a decision by the legislature that even if, as a constitutional matter, there were a tort happening within the district caused by conduct outside, that if that person outside the district had so, you know, never been in the district, never planned to be in the district, no relationship with, no benefit from the district, it just wouldn't really be fair. And there's a legislative judgment to have them have to appear in the district. And if that's the function that it's playing, then it would seem that a lesser level of continuous context might actually satisfy that policy. Here's a sophisticated defendant that is coming for all kinds of purposes to the district. And so the convenience, the legislative judgment, not the constitutional judgment about convenience might be met. So under that theory, you might win your statutory argument. The difficulty I have is that it seems to fall so far short on constitutional grounds. So my question really is, how did this case get teed up this way? Was there litigation or concessions or agreement or understanding about whether under Calder v. Jones this defamation claim was constitutionally sufficient to bring a defendant into the district? I don't know. I wasn't in the case below, Your Honor. But I do believe you are correct that there does not have to be a connection between the injury in D.C., but there does have to be conduct in D.C. And that's what we have. We have years of conduct, not only persistently pursued by the bank for purposes of raising money. I think the judge below was confused with international relations versus investor relations, the, quote, IR contacts, if you will. No, these are investor relations that the bank was engaged in over a number of years You're talking about, I mean, we don't have an exception, but one of the rationales for the government contacts exception seems to be if you're coming just to do government business, you know, coming from another state because the United States is the seat of government, it seems like there could be an analogous doctrine that if you're coming from another country only because the World Bank, IFC, IMF are cited here, they could be cited in the Azores, but they're cited here, that that maybe shouldn't count. And then I guess the counter argument that you make is, well, wait a minute, this is all commercial. But I think that's an open question, no? Well, it is commercial. There is a 4.73% ownership by the International Finance Corporation of the entire bank. And that's significant in addition to the shareholders that they had. They had other shareholders. They had also deposits. The way I look at it, Judge, is this. The plus factors, they don't provide jurisdiction. We have jurisdiction in the long-arm statute because we have two things. One, we have a non-out-of-DC, just happens in this case it was an alien, or hurting a DC resident. And then the plus factors are added in as a way of filtering out those cases where the contacts are not that significant. So in this case, what the judge did, she did what we refer to as, well, she should have taken an aggregate approach to this whole analysis. She didn't. The judge looked at, understandably, but she'd look at the website or the judge looked at other shareholders. And then they would discount that contact and then say, well, there isn't enough here. There isn't enough there. Website isn't enough. But collectively and in the aggregate, there were substantial contacts. What about the, I know you weren't counsel then, but you have the responsibility now to defend this appeal as it comes to us on the record. You say now that we should exclude the so-called government contacts, but when the district judge ruled that discovery would be limited and not, well, initially the district court allowed discovery, then when the government said, no, no, we will not afford discovery into government contacts. El Salamín did never ask to move to compel. Did he? No, you should provide that information because it's relevant and it's within the scope of the discovery. I refer to this as the shield and sword argument because the truth is here, we have an individual D.C. resident who was hurt and the bank took cover behind, if you will, the judge's order. And the judge's order was really clear. As a matter of law, we are not going to consider any of these contacts by this foreign alien in the District of Columbia, period. So the answer, though, to your point is, yes, there was not a motion to compel, a motion to reconsideration. What there also was not was a motion for protective order by the bank. I mean, this is, the judge ruled and it's almost like there's somehow a mandatory interlocutory appeal requirement. I don't believe there is, Judge. With all due respect to my opposing counsel, I don't believe there was a requirement to do that. And as we know, it's expensive and the judge was really clear on how she was ruling. So the, we only have a couple of minutes left. So I wanted to point out, we didn't agree. Actually, you don't have any minutes left. Oh, I'm over. Okay, thank you, Your Honor. Then I'll save my comment for rebuttal. Okay, fine. Thank you. Thank you. All right, we'll hear from Ms. Gately. Hi, good morning, Your Honor, and may it please the Court. My name is Mary Gately and I represent the appellee of the Bank of Palestine. Your Honor, I want to cover three principal points with the Court today. And really, the District Court's dismissal of this case for lack of personal jurisdiction should be affirmed. First, the contacts found by the District Court after granting extensive jurisdictional discovery on the topics requested by the appellant did not satisfy the Long Arms Statute, which was Section 13-423-A-4, not A-3, as the appellee's counsel suggested. Second, Mr. El-Salameen forfeited the arguments raised related to the government contacts exception that he raised for the first time in this appeal. Third, the government contacts exception applies on the facts of this case. Well, the government, I mean, the District Judge was very clear about saying you can do discovery, but nothing about governmental or intergovernmental entities, World Bank. So he does have a point. Are we supposed to butt heads further with the District Judge? Or is that, it seems like that would ordinarily be enough to preserve it, the combination of that ruling and a broader request on El-Salameen's part. Yes, Your Honor. I think that if you look carefully at the facts, Mr. El-Salameen cross-moved for limited jurisdictional discovery. He never submitted the actual interrogatories or document request that he requested, he submitted topics. The bank opposed the motion, the cross-motion for jurisdictional discovery. And importantly, Mr. El-Salameen and his counsel never filed a reply brief to that cross-motion, I mean, to the opposition that the bank filed. And the bank raised the government contacts exception in that opposition. That's at JA 112. And you can see also at JA 91 is where that cross-motion and the general topics that were raised. Excuse me, what's the date of that motion? Sorry. The date of the cross-motion? No, of your response there. What was the date you just said? Yes, Your Honor. We filed, so the judge ordered, the district judge ordered that the bank consolidate its reply memorandum in support of the motion to dismiss at the same time as it opposed the cross-motion because they... What's the date? What's the date? August 30th, 2018. JA 95. Okay. Did you have a sense, you were involved in the litigation before? Yes. And do you have a sense of how it was that the statutory issue, I mean, it makes sense that the statutory issue would be decided before the constitutional issue, but it just strikes me that there really is a question whether there's a claim here, a defamation claim, that would constitutionally be raised in the D.C. forum given Calder versus Jones, and so that was never... Was it conceded? I feel like I've read something... No, Your Honor. It was conceded. No, it was not conceded, Your Honor. If you look at the lower court brief, the due process issue was briefed, and I should point out that when the plaintiff brought this case, Mr. Althelmy, he never specified any provision of the long-arm statute. We moved to dismiss the case saying there was no general or specific jurisdiction under any of the sections of it and no due process, and so that's briefed in our initial motion to dismiss at J.A. 36-37. Mr. Althelmy addressed the due process in his brief, and then the bank addressed it again in reply at J.A. 107-109, and it's our position that this case would not, even under all the facts and circumstances that Mr. Althelmy has put forward, satisfy due process, constitutional due process. So here's my question for you. Assuming a claim, a defamation claim, that satisfies Calder v. Jones and Keaton v. Hessler as a constitutional matter and obviously satisfies the long-arm statute, the subpart A that requires tortious conduct outside the forum that's causing harm within, then the only battleground is the plus factor. Wouldn't it make sense to read in that case, to read the plus factor the way I was suggesting as a relatively minimal check so that the 18-year-old blogger in New Caledonia isn't hailed into court in D.C., but the Bank of Palestine is? Your Honor, I don't think that that's how it's been interpreted. I think those plus factors are, I think there are substantial due process concerns when the contacts with the forum don't relate to the claim. Before I posit the situation in which the contacts are, the defamation or the tortious conduct itself, because it's targeted at the forum and assuming, and I'm not saying that that's this case and it hasn't been briefed, but if it were the case, that the brunt of the harm, the situs of the harm is the forum. So you have Shirley Jones, just like in Colorado Jones, in D.C. My question is, what is the D.C. legislation mean in having those plus factors if that might be the out-of-jurisdiction, out-of-forum tort that's causing effect in the forum? And I'm thinking it's, as I said, sort of a reciprocity, you're coming and you're benefiting from the law here and so we're going to hail you into court here, but if you're really off the teenager in Caledonia, then even though constitutionally under Calderas-Jones we can hail you into court here, we, the District of Columbia, don't want to go there. Your Honor, I think based on the facts, it's not that kind of hypothetical that you've posited. No, I'm not in that position. I'm trying to get your, you know, help me in understanding what, how we should see these plus factors and what their function is. I think you have to, there's precedent in this court, repeated precedent in this court in the Forrest v. Rolfe case where you have to first look at the statutory factors and then you turn to due process if you find that the statutory factors are met. Of course. I would submit to the court that the statutory factors haven't been met in this case and there's a perception that, you know, that has been suggested by the appellant that the district judge didn't carefully consider these factors as has been done by many other courts in this jurisdiction and I think that's really not a fair reading of what the district judge did. The statute itself is set up with these three requirements and when you look at the words, regular, modified, does or solicits business, engages in any other persistent course of conduct, substantial is modifying deriving the revenue. So the court had to look, you know, at the various factors as has every, you know, court that I've read and reading a lot of these cases. If you look at the Berman v. Worldwide Industries case, the judge does the exact same thing. You have to look at these kinds of factors. You have to look at how these factors even apply and that's what this district judge did. She did it carefully and I would also note if you look at, for example, Mr. Al-Salameen's supplemental brief at Joint Appendix 889 through 894, Mr. Al-Salameen grouped these contacts in the exact same way that the judge analyzed it and I would submit that she looked at the quality and nature of the contacts in each of these. So the fact that you have four customers out of almost a million customers is not a significant contact with the District of Columbia. There's no evidence that those corporate customers were acting or that the bank was acting in the District of Columbia through having those four customers incidentally located in the District of Columbia. In fact, what the evidence shows is that those  why, you know, NGOs or something like that would even have an account with the Bank of Palestine because they have operations in Palestine. So I don't think any of the facts that they submitted under the existing law of this circuit, for example, 30 emails written over a period of four years to a global email list that did not target the District of Columbia, did not solicit business, sent to a small group of people in the District of Columbia which the bank credited as informational, not solicitation. The transactions that are referred to, there was only one transaction that occurred via the website for a total of $578. And importantly, the amount of revenue from those four customers over the four years that the judge gave jurisdictional discovery was a mere $6,685, which pales in comparison to the net commission and interest revenue of the bank, which is over $100 million. So there's no basis on which you can accumulate these factors to say that there was some that the modifiers in the statute are satisfied, the persistent, the substantial, or the regular. Those things just do not apply. In the limited amount of time, I'd like to cover this, the government contact exception. The court will indulge me. First of all, I covered the forfeiture point. Our position is that they forfeited that. On the government contact exception, there's more than one purpose behind the government contact exception. You have in the environmental research case, not only a First Amendment rights petition, but a, whatever we want to call it, a recognition of an interest that the District of Columbia does not want to turn into a national judicial forum. I think that could be a policy, you could reflect on it as a policy decision by the D.C. legislature that the federal courts sitting in the District of Columbia are bound to accept. There's also the due process underpinnings that are at issue here that you've spoken about, Judge Pillard. If you look at the cases that the appellee relies upon, the Roseby-Silver case, as well as the Lex Tech-Skillman, they both carve out that in cases in which the due process interest is exactly at issue when you have the contacts that don't relate to the claims in this context, which is what we have here, in particular, that's when you have the sensitive need for the government contact exception. So there is a due process underpinning. Ms. Gately, as you say, a, the constitutional claim has not been adjudicated by the District Court, and b, if you assume, as we can in the context of defamation, that an out-of-forum tort with in-forum effects can, at least the Supreme Court has recognized, that that alone, without further context, can satisfy a due process. I don't understand. May I, can I ask here? I'm not clear about this. So in Crane, the court held that the D.C. did not intentionally go all the way up to the limits of due process. So that even, isn't it the case that even if the defamation claim alone would have been enough, that's not the question before us. It still has to reach the plus factors. And in Crane, it also says that those require, because of the use of persistent and regular, etc., that there be a continuing set of context. Right? And that's all there is to it. The D.C. Court of Appeals has already explained to us, Ms. Gately, what the meaning of that section is. Isn't that, am I wrong about that? Yes, I would agree with you, Judge. Now, I'd like to ask a question about the forfeiture issue, and I want to understand the timeline for a minute. So the district court permitted Elsa Lamin to conduct discovery excluding the contacts with the government. That was in November of 2018. Is that right? That's the JA-6. That's the court's permission to conduct discovery. Then, in 2019, the bank objected to the extent that the discovery request sought information on the bank's interactions. That's JA-176. At that point, Elsa Lamin doesn't move to compel or otherwise to object. But in February of 2019, he files a supplemental brief opposing the motion  And he doesn't discuss the government's contracts exception at all. No, that's correct. That's JA-893. Well, wouldn't that be the place to raise the issue? Just not a motion to reconsider or anything like that. That's an opposition to the motion to dismiss. That's correct, Your Honor. The district court allowed the parties, after jurisdictional discovery was completed, to file supplemental briefs. And there was no contesting the government contacts application at all by Mr. Elsa Lamin in any form to the district judge. You simply don't find the arguments that are now being raised on appeal ever raised to the district court. Therefore, she couldn't pass on those things. And this is exactly the kind of case that should pass. What was never raised? The non-resident alien application. The two commercial, if you will, the government contacts can't be applied in what they that's not even accurate under the case law, Your Honor. Commercial, if you're relating to the core mission of the government agency, which in the case of the IFC, the mission is to partner with private sector to assist with development in, you know, developing in poor countries. So, coming to the District of Columbia to interact with a government agency like OPEC or the World Bank and the IFC are really the only place you can come to do that is the District of Columbia and those contacts don't count against you, whether or not they're characterized in the way that has been done by the Atelier in this case. I see that I'm well over time. You are. Let me just ask whether anybody else on the bench has any questions for you. I have no further questions. Okay. Thank you very much. Thank you, Your Honor. Does Mr. Blakely have any time left? Council was out of time. I'm sorry? Council was out of time. We'll give you two more minutes since we went over. Thank you, Your Honor. I'll be brief, although that I know is somewhat of a misnomer sometimes with lawyers. The harm occurred here in the District of Columbia to a D.C. resident. I think that's really important. I think Mrs. Gately is trying to set a new standard. I don't understand why that's relevant. The statute assumes that the harm occurs to a D.C. resident and the issue is do you meet the plus factors? I would agree. Yes, Your Honor. That is exactly right. I mismentioned that because that's not really an issue before the court. We're just going through these plus factors and what it appears to me is that they're trying to layer in another requirement. The plus factors, according to Crane v. Carr, which is the leading case, are to be evaluated, but they're not jurisdictional requirements. You don't have jurisdiction if you don't have a means of achieving personal service. That's the purpose of the long-arm statute. If you don't meet the long-arm statute, there's no jurisdiction. That's really all there is to this here. I'm not sure how you can say they're not jurisdictional. They are jurisdictional. They may not be constitutionally required, but they're necessary for personal jurisdiction. Isn't that right? I think that is right, but the plus factors are not jurisdictional. Those are a filter. They are a filter. If you do not succeed in getting, you don't get jurisdiction because you can't get service. Isn't that right? You're referring to service of process? I'm talking about personal jurisdiction. You can't achieve personal jurisdiction without achieving service of process and you can't achieve service of process unless you satisfy the long-arm statute. In this case, I think that's right. Yes, Your Honor. One other question about the timeline question I was asking. At any point, any point in the district court before the district court issues its 2018 effort orders with respect to discovery, is there any point where Eslamin argues, any point that the government contacts exception does not apply? Certainly, in terms of assertions in the complaint, they are replete with arguments or allegations. I understand. As a matter of law, is there any point where you make the legal argument that any legal argument that the government contacts exception should not apply here? I don't know the answer to that, Your Honor. I don't believe so, but I know that the judge's order was really clear and it limited discovery. What we never had was a motion for a protective order by the bank to say that, hey, we're not going to produce these contacts. Following the order, the discovery we don't have the site to, but the discovery request went out. They went out after the judge's order. There should have been a motion for a protective order. I don't know. I'm sympathetic to your point that it's what Eslamin asks for, but then when the bank, in the cross motions for jurisdictional discovery, the bank argues that its contacts with IFC should be excluded. There's no reply brief there, which would be the perfect time to raise it. It might have even persuaded the district judge. That's why we have these preservation requirements. We're not sandbagging a trial judge who never was presented with the question with any briefing on it. We don't have any reply brief there. When the bank raises it in objection to an interrogatory, then Eslamin doesn't move to compel the response to that interrogatory. For example, saying even if there's a government contacts exception, it doesn't apply to the IFC because that's commercial or something like that. No such motion to compel. Then in the post-discovery supplemental briefs, nothing about well, of course, we disagree with this, but we're preserving that. You don't have to butt heads with the district judge. I think the question is, was the district judge ever fairly presented with a dispute over the legal applicability of this exception? Well, we believe that the judge was, but I think our position is pretty clear also that irrespective of the IFC, there were sufficient contacts in the District of Columbia to support jurisdiction, irrespective of the IFC. Yes. Thank you very much for your time. Thank you. Yes, you have. Oh, I'm sorry. No, I just want to see whether any other judges had any questions. Apparently not. We'll take the matter under submission again. Thank you for a very interesting argument this morning. Take care.
judges: Garland, Pillard, Sentelle